May it please the court, my name is Scott Martin. I represent Mr. Oscar Ramos Ceron on this appeal of the 63-month sentence that he received upon his conviction for illegal re-entry. Mr. Ceron contends that the district court misapplied the guidelines and reversibly erred when applied a 16-level crime of violence enhancement based on his prior Florida conviction for aggravated battery under the causes great bodily harm prong of that statute. The issue is presented for de novo review and we're asking that the court vacate the sentence and remand for resentencing. Today I'd like to address why the district court was wrong to conclude that it was a crime of violence under the has as an element prong of the crime of violence definition in 2L1.2. Also why the offense does not qualify as the enumerated offense of aggravated assault. Also why the government cannot show that the error was harmless notwithstanding the alternative sentence that was imposed by the district court. But as a threshold matter, your honors, I'd like to discuss the issue of collateral estoppel or issue preclusion. As Mr. Ceron brought to the district court's attention in his written objections to the PSR, this very same objection to the 16-level enhancement was litigated in his previous illegal reentry case in 2011 and the same division of the US District Court for the Southern District of Texas, although before a different judge, it was Judge Alvarez. And in that case, Judge Alvarez applied only a four-level enhancement under 2L1.2D rather than the one that Mr. Ceron had raised. We say that Judge LaMelle, who was the sentencing judge in this case, ought to have given a preclusive effect to Judge Alvarez's prior determination. And the reason why is that preclusion is generally appropriate, whereas here in both the first and the second actions involve application of the same principles of law to a historic fact What's your argument for here? Well, your honor, just at this moment I was quoting from federal practice of Brighton Miller, but that is in the civil context. I don't have any authority directly on point in the criminal context of issue preclusion in this way being applied in successive sentencings like this. I would say though that it is a common law procedural safeguard that's been around for a very long time, you know, as far back as the Oppenheimer case with Justice Holmes. That's the case that collateral stop on issue preclusion was sort of introduced to the criminal context. Take me back on this. What did you say Judge Alvarez did with that? Judge Alvarez accepted, she granted the objection by Mr. Ceron to the 617-level crime of violence enhancement. These exact same arguments, no intervening changes of law. Was that ever appealed or anything? It was not appealed. No, the government did not appeal in that case. So that's why we're arguing that issue preclusion would seem to be applicable here. It's the same sort of interests that you find in the civil context such as finality of judgments, judicial economy, relieving particularly defendants from the And, ironically, these are the same... Do you think there's any reason that that may never have come up before? Well, yes, Your Honor. I think that issue preclusion or collateral estoppel in the criminal context sometimes gets confused with double jeopardy because in Ashby Swenson, the concept was constitutionalized and the court essentially said that double jeopardy encompasses collateral estoppel. Ashby Swenson didn't exactly say that it restricts issue preclusion, though, to the double jeopardy context. So our position is that it's a procedural safeguard, common law safeguard, that lives and breathes separate from double jeopardy as well. So I think there's been confusion about... We can make some law on this. Yes, Your Honor. I believe this is the case. And I will also point out that these interests are, ironically, are the finality of judgments. These are the interests that the government was championing in the Gamboa Garcia case, which we've cited in our briefs. And in that case, the court essentially characterized the government's position as, well, the government saying that it shouldn't be a variation on the movie Groundhog Day with Bill Murray, where we do the same thing over and over. And so I'd like to point that out. The court has said, though, that collateral estoppel, the interests are not nearly as important in criminal cases. It doesn't mean it doesn't exist. But aside from that, was this issue properly raised below? I mean, I didn't see anything, and I still don't see anything, showing what Judge Alvarez's reasoning was. And for issue preclusion, you really need to get to the nitty gritty of what the judge's or the ruling was based on. Your Honor, we believe that it was properly preserved at page 8, footnote 2 of the written objections, where it was brought to the district court's attention that the same objection was made in the case number L11726 before Judge Alvarez. And so, assuming that Judge LaMalle was familiar with the case, we've seen that. This court's never required objections to be made with ultra and ultra-precise terms. And also, written objections are sufficient. We know from the Medina-Anasazio case that a written objection can be sufficient. We don't have the transcript to know exactly what Judge Alvarez's reasoning was. Your Honor. Sometimes judges, when these objections are raised, and I saw this in a case just a couple weeks ago, the judge will just say, you know what, I'm just going to take those points off. I'm not going to rule on the issue, but it's just easier for everyone. Or sometimes the government will say, oh, yeah, we're not arguing with that enhancement anymore. I mean, that's why it would be nice to know exactly. Your Honor, the closest thing I have, and it's, and I would ask the court to take judicial notice of it, it's in the record of the district court proceeding the prior cases, the statement of reasons. Where in that case, Judge Alvarez made clear that as to paragraph 14 of PSR, which was the paragraph relating to the, this particular enhancement based on this case, section 201.2B1A2 is not applicable, and guideline section 201.2B1D is applicable. And if you, and also you can take judicial notice of the objections of the defendant in that case, as well as the government's reply, and the, the probation officer was the same probation officer, and the addendum is, cites most of the same cases responding to the PSR, the objections to the PSR. So it really was a do-over for the government in this case, and I would ask the court to, to take judicial notice of those records. And if you'd like, I, I would be happy to provide copies after this hearing today, if that's something that you're interested in. At this point, Your Honors, unless there are any more questions, I'd like to move to the merits. This court was wrong to conclude that the prior offense has use of force as an intentionally or knowingly causing great bodily harm prong is, can be seen as simply a simple battery plus intentionally or knowingly causing great bodily harm or permanent disability or disfigurement. And in this case, using the Shepard documents, which is the information and the judgment which were attached to the PSR in this case, we can narrow it down to a touching against the will of the victim and knowingly or intentionally causing great bodily harm and or permanent disfigurement. Now, since that, since pleading that information, since that information was worded in the disjunctive, pleaded that information, he could have simply admitted to touching against the victim's will plus, and thereby knowingly causing great bodily harm. And it's our opinion, the Supreme Court has said that touching in a simple battery context in Florida, it can be slight, it can be a tap on the shoulder. Florida cases also say it can be touching something that's intimately connected to the victim's body, such as clothing or a cane or a purse. And this kind of touching does not necessarily require destructive, violent force. Therefore, under Vargas Duran and Villegas-Hernandez, this offense does not have use of force as an element. The fact that the offense requires causation of great bodily harm, that does not equal use of force. We know that from Vargas Duran, Villegas-Hernandez, and— Here, don't we have touching under the—that's what makes it a battery? Yes. And then what makes it aggravated is causing great bodily harm. So when you have touching that causes great bodily harm, doesn't that have to involve the use of force? No, Your Honor, it doesn't. In fact, that was the sort of issue that was at play in Vargas Duran. And Vargas Duran made clear that causing bodily injury and use of force are not the same. These are separate inquiries. Right, but here you have the touching plus—and I agree with that—but here you have two things, touching plus causing bodily harm. That's true, Your Honor, but as we've said, the touching can be slight, and it's our position that the touching is not violent, destructive force. Say, for example, someone taps the victim on the shoulder slightly and the victim falls over and it causes a broken nose or lacerations, that would be an example of a case that would be—that would apply—that this statute would apply to. So I think that we could agree that the touching with—the slight touching or tap on the shoulder in that instance would not be violent, destructive force. So the fact that it resulted in a great bodily harm does not mean that the touching was destructive and violent in the way that Vargas Duran requires. Next, if there are no further questions on that, I'd like to address why this offense does not qualify as the enumerated offense of aggravated assault. This is an issue that, frankly, the government did not comment on it briefly. In Martinez-Flores, this court looked at the model penal code for the generic definition of aggravated assault, and under the model penal code, to be aggravated assault, it requires serious bodily injury. Serious bodily injury is injury that has a substantial risk of death or injury that results in permanent disfigurement or protected loss or impairment of a bodily function. Great bodily harm in Florida, however, involves non-permanent injuries that do not create a substantial risk of death. Great is defined under the Florida case law as slight, you know, as—or trivial, and no permanent injury is required. It can be a broken nose. One case was a broken nose, a lump on the mouth, a bruised eye, and in this very case here, it was alleged in the indictment that it was lacerations requiring stitches. That's the type of injury that in the Calzada-Ortega case, which I provided in my 28J letter, this court found not to qualify as serious bodily injury because— Well, now, wait a minute. Tell me about that. In other words, you lacerate somebody in the face. Is that where he was? Where did he cut him? Laceration requiring force does not necessarily result in permanent disfigurement. I mean, I'm sorry. Laceration requiring stitches. Did I—if I said laceration requiring force, I misspoke. No, no, no. I meant requiring stitches. Lacerations requiring stitches. Seems like a crime of violence. Well, Your Honor, that was— I mean, the victim would surely think it was violence. Well, as we know, Your Honor, in this context, Vargas Duran and Martinez Flores have set forth the law. This court has said what that is, and it does not meet the generic definition of serious bodily injury. That's why it's not enumerated. No, I thought you said a permanent disfigurement. Right. Well, permanent— I don't care what our previous cases have said to tell you the truth. I mean, it will, obviously, as a matter of law, but as a matter of common sense, I— Well, Your Honor, in Florida, the Florida courts have said that even a matter of whether that's disfiguring is a fact question. But does it have to disfigure? It has to be permanently disfiguring. Is it and or permanently disfiguring? Under the—are we talking about under the— Statute. Under the Florida statute, it is or permanently—yeah, it is or permanently disfiguring. Not and or. Well, it's—under the statute, it's or. It was charged as and or. But when you admit to—when you admit to an information or plead to an information in Florida that's worded in the disjunctive like this, you don't necessarily admit to everything. And here, it was—the information said great bodily harm and or permanent disfigurement to wit lacerations requiring stitches. So the lacerations— Do we know one way or another whether it was permanent disfigurement? Do we know, Your Honor? I don't think we have that in the record, Your Honor. No. What does permanent disfigurement mean? Does that—does that mean face? Disfigurement—I mean, I was not able to find a precise definition for that in the Florida cases I looked at. But disfiguring is marring the appearance. And, you know, so a skull— I mean marred his chest. Would that be it? His chest? Well, I would think that that would—if it was permanently disfiguring, if a fact finder looked at it and determined that your chest, the appearance of it was permanently marred, yes. But we don't have anything— In this case, it said great bodily harm and or permanent disfigurement. So the lacerations requiring stitches could modify great bodily harm in this case. So that's—Your Honor, that's primarily our position on that issue. And if—with your permission, I'd like to go ahead and address why the government cannot show that the error is harmless. As Your Honors know, harmlessness— Oh, yep. I'm out. Sorry. You need your own rebuttal. Thank you, Mr. Martin. Okay. Thank you. Thank you, sir. What you've got to say. May it please the Court. Collateral example does not apply here. Sarone never raised this during the sentencing hearing. He only raised it in his written objections. And he never offered any records from the prior proceeding to support his position. It wasn't until today, before this Court, that he started talking about the specific records in the Laredo proceeding. And the—his objection, rather, in the district court here, referenced paragraph 25 of the PSR. But the PSR, as I said in my brief, said nothing about a prior crime of violence enhancement. So I think under these circumstances, under this record, collateral estoppel absolutely does not apply here. But what does apply is the force of element—excuse me, the element of force. And Sarone's sentence was properly enhanced because aggravated battery under 784.025.1.A.1 is a crime of violence. It has an element of force. And the Eleventh Circuit said so as recently as October. In Dixon, which I put in a 28J letter, the Court says, quote, It is clear that a conviction under either prong of 784.045.1.A constitutes a violent felony for the ACCA because violent physical force is an element of the offense. And, of course, we can use the ACCA cases in the 2L12. The Florida offense, therefore, involves the use of force. The statute does not penalize nonviolent touchings. What it penalizes is the intentional use of violent physical force that results in great bodily harm, permanent disfigurement, or permanent—excuse me—disability. A mere touching is far removed from violent physical force. The statute as a whole establishes mere touching isn't enough for a conviction. And this court in Flores-Gallo, which is cited in the brief and more specifically was discussed during sentencing and in the PSR, said as much in relation to a similar Kansas statute. So based on the applicable law, this court should find that the element of force component supported the enhancement because physical force had to be intentionally exerted to the degree to cause bodily harm or permanent disfigurement. Based on that, the court doesn't need, as I said in the brief, to reach the issue of whether or not it's a enumerated offense. But as I also pointed out in my brief, Florida courts have been very clear and distinguished great bodily harm from slight, minor—excuse me—or moderate harm. The enumerated analysis does not require an exact match. And interestingly enough, the model penal code does not require serious bodily injury to even actually occur. An attempt is enough. But regardless of the element of force as well as the enumerated, even if this court determines that it cannot uphold the enhancement on either the force prong or on an enumerated prong, there is plenty in the record to find that any alleged error is harmless. The district court clearly stated that it would impose the exact same sentence even if the enhancement was improper and went to great lengths to make sure that this court knew it. During the sentencing objections, the court said that even if Cerrone was correct and the enhancement didn't apply, the court would depart upwards or very upwards— it used both terms—and impose the same sentence unless somebody said why it shouldn't do so. And nobody accepted the court's invitation to change its mind. The court then went through the actual sentencing for both the underlying crime here as well as the supervised release violation. And then sua sponte revisited the issue and said after imposing consecutive sentences, it wanted to reemphasize it would impose the same sentence if Cerrone's objections were later allowed by this court. So unlike Nunez in Mr. Cerrone's 28J letter, the district court here did not make conclusory remarks or instead it offered specific details to support its decision. The fact that the district court didn't recite the guideline range or what the guideline range would be without the enhancement shouldn't be determined. That's just some formulaic approach, particularly where here the district court was fully prepared for its hearing, fully cognizant of Cerrone's objections because I think they were something like 8 pages long, they were discussed at the hearing. Common sense dictates the district court would know the gap would be large because it's a 12-level differential. The government never tried to argue for 8 levels. Cerrone admitted that he would get a 4 level, so it was 4-16. That difference is, again, common sense says that it would be large. And then especially a formulaic approach shouldn't be employed where the district court has made clear for its alternative sentencing reasons not only at the beginning but at the end of the hearing. As Judge Costa knows, a district court is entitled to exercise its sentencing discretion and the district court here did just that. Relying in referencing the PSR, the addendum, the factors under 3553A, as well as Cerrone's criminal history. And while the government maintains no error occurred, if this court disagrees, it was harmless. And unless the court has additional questions, I will... I mean, the enhancement undoubtedly impacted the sentence, though, right? I mean, the judge sentenced him to 63 months, I think, which was the high end of the guidelines if the enhancement applied. So isn't it just common sense that that's where that number came from? It came from the enhancement that, you know, we have to decide whether it was right or wrong. But if it was wrong, it clearly influenced the sentence. He didn't give another reason why 63 months. I mean, he said, oh, it promotes deterrence and all these other things, but he didn't give another reason why he would have picked 63 months out of the air. But the cases that I see over and over again, judges never particularly parse out why they are going to select a particular sentence. But this judge wanted to do, as the record makes clear, is not re-sentence him. So on that basis, it selected the sentence. The judge... there's nothing in the record indicating that... I realize what Your Honour is saying, that because the high end of the guideline was 63, and he did 63. But the fact of the matter is, the court was clear, this is the exact same sentence I would impose. And I am not... you know, I'm not in a position to speculate why the judge did that or didn't do that. His reasons are very clear from the record. Okay, thank you very much. Ms. Wilson, Mr. Martin. Your Honour, if I may, I'd like to first address this alternative sentence issue. Government here has said that reciting the guidelines, this is just a formulaic approach, that it really doesn't matter is essentially what the government is saying. That's not true. Under Gall, the Supreme Court says that the guidelines are the starting point and the initial benchmark. And therefore, in accordance with Gall, an alternative sentence should not relieve the district court of its sentencing duties. Under this court's decision in Bonilla, it's clear that a court must consider the correct guideline range and justify any variance with reasons tied to 3553A factors. We've provided also the Nunez-Granados case, which was mentioned by government counsel, where the court did not do that. The case was remanded, and the defendant in that case actually did get a lower sentence on remand, even though the judge had said I would impose the same sentence under 3553A, regardless of what the guideline calculation is. Now, that doesn't... You have to look to the transcript to see that, but I've reviewed it, and it's clear from the transcript and also on the docket sheet that he got a lower sentence on remand. So... Just requiring these magic words. District court judges are sentencing people every week. They know what a 12-point swing means. I mean, they look at these guidelines almost every day. The real question is whether he knew what the alternative was. It just seems a little... Your Honor... He has to use these magic words of stating that on the record. Well, Your Honor, I think at a minimum that he does need to identify what the correct range is. And so we'll know what the extent of the variance he's imposing is. I mean, in this case, a 63-month sentence that the court imposed was 47 months higher than the top of the correct guideline range. And when, in this case, the court basically said, you know, to the extent that counsel may be correct, which I don't find the interpretation to be correct, that is not a crime of violence, I find that the court would use that anyway to be a grounds for departing upwards to the variance up above any recalculated guidelines without the enhancement for crime of violence and impose the same sentence that I'm about to impose here unless I'm given some other reasons from either side in pronouncing that sentence I'm contemplating. That's right there, Your Honor, is an example of the court essentially relieving itself of its sentencing duties. That's not consistent with law. Usually in my experience, this isn't an issue because the objection filed by the PD or whoever else will say at the end, and if you grant my objection, that means the sentencing range is now 10 to 16 months or 6 to 12. And I don't, I looked at it here, I don't think that was done here, but usually it's done in front of the judge. Your Honor, you're correct. In this case, that was not done. Nowhere in the objection, in the PSR, in the addendum, at sentencing, nowhere was the correct range of 10 to 16 months, which is what the applicable range would be with a 4-level enhancement or 201 point under the, for the felony crime enhancement, the 4-level enhancement. That's what it would have been. It was not mentioned anywhere. So, it appears that the judge in this case, in my position, is that the court has relieved itself of the duties it had under Gaul. I'd also like to mention that in the government's brief, they've cited the case of Valdez. They've said that because the judge in this case imposed a consecutive revocation sentence, that somehow we should say that he had a particular sentence of mine, a total sentence in mind. That is why the alternative sentence was harmless. Well, unlike the Valdez case where consecutive sentencing meant something because these were factually related offenses, in this case, consecutive sentence, that's the default under Chapter 7 of the guidelines. So, essentially, it tells you nothing about the judge's motivation. Also, in Valdez, the sentence that was imposed actually fell within the below, or within the correct guideline range. Obviously, in this case, we have a sentence that fell 47 months above the top of the correct guideline range. So, unless there are any other questions, Your Honor, we ask the Court to vacate the sentence and remand for resentencing for the reasons we've given today and in our briefs. Thank you, Mr. Martin. We call the next case of the day and that's Vine Street versus Bo Warner.